## IN THE UNITED STATES DISTRICT COURT
## FOR TE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PDP HEALTH MANAGEMENT, INC., | CIVIL NO. 18-1121 |
| Plaintiff, | |
| v. | RE: |
| MOLINA HEALTHCARE, INC;<br>MOLINA HEALTH CARE OF PUERTO RICO,<br>INC. and POLICLINICAS MEDICAS<br>ASOCIADAS, INC., | UNREASONABLE RESTRAIN OF TRADE OR<br>COMMERCE; INJUNCTION; DECLARATORY<br>JUDGEMENT; SPECIFIC PERFORMANCE AND<br>DAMAGES; TORTIOUS INTERFERENCE;<br>TEMPORARY RESTRAINING ORDER; |
| Defendants. | PRELIMINARY AND PERMANENT INJUNCTION<br>ORDER AND DAMAGES |

## VERIFIED COMPLAINT

**TO THE HONORABLE COURT:**

COMES NOW plaintiff PDP Health Management, Inc. ("PDP"), through the undersigned

counsel, and respectfully states, alleges, and prays as follows:

## NATURE OF PROCEEDINGS

1.      PDP alleges through this Verified Complaint that a temporary restraining order

and/or preliminary should issue, among other remedies, to prevent defendants Molina Healthcare,

Inc. ("Molina USA") and Molina Healthcare of Puerto Rico, Inc. ("Molina Puerto Rico")(jointly

referred to as "Molina") from further carrying out actions of coercion and/or intimidation against

PDP by illegally terminating its provider agreement and PDP's primary care physicians

agreements in an unreasonable restraint of trade or commerce in agreement and/or conspiracy with

defendant Policlinicas Medicas Asociadas, Inc. ("Policlinicas") by way of illegally transferring

Medicaid beneficiaries assigned to PDP's independent practice association ("IPA") to that of

Policlinicas and interfering with PDP's contracted primary care physicians, failing to comply with contractual duties and obligations, exposing PDP to liability due to no longer being able to provide care for its patients and causing the inherent loss in goodwill, reputation and patient endorsement resulting from Molina's acts.

2.      PDP seeks a declaration that under the provider agreement executed with Molina Puerto Rico, any termination with cause provides for a term of (30) days to cure deficiencies, rendering any notice of cancellation with cause, without providing said period for cure, as ineffective. The alleged breaches are curable. Furthermore, as per negotiations with key corporate personnel of Molina, the applicable risk letter to which the financial model of the provider agreement was based is that of Triple – S.

3.      PDP also seeks a declaration that under the provider agreement and current Puerto Rico law, irrespective of the cause of the termination, PDP's primary care providers are bound to continue to provide services to their patients for a term of (90) days after the date of the termination notice. Any act contradicting the above-mentioned requirement affects drastically the health and security of beneficiaries by interrupting a medical-doctor relationship and interrupting the continuance, managed care model seeks to provide.

## PARTIES

4.      PDP is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico, duly authorized to do, and in fact doing business in Puerto Rico, with its principal place of business located at Glenview Gardens Shopping Center Ste #4 Ponce, PR and postal address PMB 261 P.O. Box 7105 Ponce, PR 00732-7105. PDP is a "provider" as such term is defined by 42 C.F.R. 438.2. PDP offers health services as an IPA with clinics in Glenview Gardens

Shopping Center Ste #4 Ponce, PR and Plazoleta Morel Campos Ste #9 Ponce, PR, its current number is IPA-401.

5.       Molina Healthcare, Inc. is a foreign for-profit corporation organized under the laws of the state of Delaware and authorized to do business in the Commonwealth of Puerto Rico since May 2015, with principal offices at 2000 Oceangate, Suite 100, Long Beach, California, 90802, and acts as the parent company of Molina Puerto Rico. Its designated office and resident agent are located at Oriental Center, Suite P1, 254 Muñoz Rivera Avenue, San Juan, P.R. 00918. Its phone number is (562) 435-3666.

6.       Molina Healthcare of Puerto Rico, Inc. is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico, duly authorized and doing business in Puerto Rico, with its principal place of business located at 654 Plaza, Suite 1600 654 Avenida Muñoz Rivera San Juan, PR 00918 and postal address P.O. Box 364988 San Juan, PR 00936-4988. Molina Puerto Rico is a "Managed Care Organization" ("MCO") as such term is defined by 42 C.F.R. 438.2. Molina Puerto Rico executed an agreement with ASES to provide coverage for Medicaid beneficiaries under the governmental health plan, at the Eastern and Southwestern regions, as such regions were defined by ASES.

7.       Policlinicas Medicas Asociadas, Inc. is a for-profit corporation organized under the law of the Commonwealth of Puerto Rico, duly authorized and doing business in Puerto Rico, with its principal place of business and postal address 2015 Ave. Las Américas #101, Ponce, P.R. 00717. Policlinicas, as PDP, is a "provider" as such term is defined by 42 C.F.R. 438.2. PDP offers services as an IPA with clinics in 2015 Ave. Las Américas Ste. #101, Ponce, Puerto Rico and its current number is IPA-406. Policlinicas was assigned approximately 6,000 beneficiaries under its

care and provides services through its 6, part-time and full-time, contracted general practitioners, family medicine physicians and pediatricians.

8.      All parties are considered "persons" as such term is defined in 15 U.S.C. § 7.

## JURISDICTION AND VENUE

9.      The Court has original federal question jurisdiction over the instant action pursuant to 15 U.S.C. § 15 and pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), as this case involves substantial claims arising under Sherman Act, 15 U.S.C. § 3, the McCarran Ferguson-Act, 15 U.S.C. § 1013(b) and because this case involves violations to agreements which are heavily regulated under the Social Security Act, Title XIX, 42 U.S.C. §§ 1305, and applicable regulations, as to the contracts forms, clauses and other terms. The Court also has supplemental jurisdiction over Commonwealth law claims pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in this Court pursuant to 15 U.S.C. § 15 and 28 U.S.C. § 1391(b) and (c), given the fact that Molina Puerto Rico and Policlinicas are considered citizens and/or residents of the Commonwealth of Puerto Rico and the claims alleged herein arose in this district.

## FACTUAL ALLEGATIONS

11.     In January 30, 2015, Molina Puerto Rico entered into a Provider Services Agreement with PDP ("PDP Agreement") to provide health services as IPA number 401 to a population of approximately 12,049 Medicaid beneficiaries. Even though executed on January 30, 2015, the PDP agreement was to be effective on April 1, 2015, date when the transition from the previous Managed Care Organization ("MCO") in the region, to wit, Triple – S, to Molina was to be complete. **[Exhibit 1].**

12.     During the negotiations and dealings between Molina's top corporate personnel and that of PDP that lead to the execution of the PDP Agreement, the parties agreed that the applicable

4

risk letter was that which was previously utilized by Triple – S when it managed the applicable regions. [**Exhibit 2**].

13.     In managed care industry, a risk letter is a document provided by the MCO to its providers where it lists a set of specific codes and procedures and includes a statement of what specific fund will be affected for each codes and procedures, and the assignation of the responsible party for such payment, MCO or the provider. [**Exhibit 3**].

14.     At all relevant times during the negotiations, PDP dealt with top executives and personnel from Molina USA, to wit, Mr. Domenico Pagone, who, during the negotiations period, was the Associate Vice President, Provider Network Strategy & Services of Molina USA. [**Exhibit 2**].

15.     In an email sent by Mr. Domenico Pagone, he requested that PDP signed and returned the proposed agreement with Molina's commitment that the parties would continue to discuss all pending matters, including the risk letter and financial model. [**Exhibit 2**].

16.     During the months prior to the beginning of the PDP Agreement, PDP reconciled the assigned beneficiaries with the lists submitted by ASES to Molina and verified against the lasts reports submitted by Triple -S to PDP. Notwithstanding, on April 2, 2015, PDP started to notice discrepancies in the number of assigned beneficiaries with the lists prepared by Mrs. Antoinette Riera, Provider Services Representative II of Molina Puerto Rico and Mr. Leni Pantoja Rojas, Contract Manager I of Molina Puerto Rico. [**Exhibit 4**].

17.     PDP submitted to Molina a required attestation regarding the number of beneficiaries assigned to each of the Primary Care Physicians ("PCP") contracted under PDP. Said attestation was submitted with the agreement in part of Molina that they would review the lists of assigned beneficiaries and would effectuate the necessary adjustments to substitute those PCPs

who were not part of PDP and reassign the beneficiaries who were missing from Molina's lists. [**Exhibit 5**].

18.     On April 2, 2015 Mr. Juan E. Álvarez-Rivera, Executive Director of PDP, sent an email to Antoinette Rivera, Domenico Pagone and Frederick Crawford of Molina notifying that the membership list reflected at Molina's provider portal reflected a total of 6,717 beneficiaries assigned to PDP instead of the 11,376 attested. PDP was worried that said error, especially during the transition period from Triple – S to Molina, it could lose assigned beneficiaries due to the uncertainty the beneficiaries would feel when they went to the regional offices and were informed that their PCPs did not appear under their Primary Medical Group ("PMG"), in this case PDP. [**Exhibit 5**].

19.     PDP also notified Molina that one of its PCPs, Dr. Héctor de Jesus Cabrero, suddenly appeared affiliated to Policlinicas' IPA-406 instead to PDP, and that all of Dr. De Jesús Cabrero patients, almost 1,650, were also assigned to Policlinicas' IPA. [**Exhibit 5**]. Even though Dr. De Jesús Cabrero was eventually assigned to PDP, Molina maintained almost 1,000 beneficiaries under the assignment of Policlinicas.

20.     On April 2, 2015, Molina recognized that in fact there were discrepancies with the issuance of ID cards to beneficiaries where it stated that said beneficiary was assigned to another IPA. Molina requested, that even though the ID card of the beneficiaries stated otherwise, PDP continued to provide services and that payment for such services was going to be upheld. Said information was confirmed and approved by Mrs. Lisa Hatton and Mr. Aaron Sánchez of Molina USA. [**Exhibit 5**].

21.     Mr. Pagone also notified that he and Mrs. Antoinette Riera had escalated the issue with an established goal to get the membership and providers of PDP corrected in the system as

quickly as possible. Molina's representatives were also discussing a contingency plan in case the system was not corrected before the April 15, 2015 capitation payment was processed. [**Exhibit 5**].

22.     On April 10, 2015 Mr. Álvarez-Rivera again notified Molina that, even though there was some progress with the correction in the membership lists, the beneficiaries assigned to Dr. Moraima Pagán, PCP under PDP, those who were previously under the care of Dr. Alvin Balay's when Triple – S was the MCO in the region, were still not assigned to PDP. [**Exhibit 6**].

23.     On April 15, 2015 Molina made a first payment of $270,000 with an explanation of payment which indicated that PDP had over 12,049 beneficiaries under its care. [**Exhibit 7**].

24.     Molina kept making payments to PDP in the amount of $270,000 recognizing over 12,049 beneficiaries under PDP, even though there were errors in the information system. [**Exhibit 8**].

25.     On July 1, 2015 Mr. Álvarez-Rivera sent an email to Edmundo Cabán, Associate Vice President Provider Network Management and Operations of Molina USA notifying that Molina had reassigned the beneficiaries of PDP, almost 1,636, to an IPA in Jayuya. [**Exhibit 9**].

26.     When, at least, one of those beneficiaries who was reassigned to the Jayuya IPA attended Molina's offices to claim that he/she was unable to attend the Jayuya IPA to get urgently needed services for high blood pressure, instead of fixing the issue with the incorrect and/or illegal reassignment, Molina's personnel offered the beneficiary transportation to Jayuya.

27.     Even though Dr. Pagán's assignment to PDP was eventually fixed, as it should have since the beginning, only 500 beneficiaries out of the 1,636 which belonged to PDP, were assigned back to PDP.

28.     This series of events and/or issues with PDP's beneficiaries and/or PCPs' assignments continued. PDP had to constantly contact Molina call center in presence of the beneficiary seeking treatment at PDP's clinics to have them reassign said patient to PDP retroactively, because again, the beneficiary was reassigned to another group without said patient making such request.

29.     In a meeting held on September 22, 2015 with Mr. Edmundo Cabán and Mrs. Madeline Figueroa, Chief Operating Officer of Molina Puerto Rico, PDP again requested that Molina fixed the errors which had an effect in the number of beneficiaries assigned to PDP. Particularly it was notified that Molina had not, to said date, assigned all of PDP's PCP to its group. Also, it was stated that under Molina's provider portal PDP's membership did not reflect the correct information, creating issues when trying to validate eligibility of beneficiaries. Even though PDP could not validate eligibility, as per agreed upon with Molina back in April 2015, PDP did not deny or refused to provide services to beneficiaries with an incorrect PCP or PMG information. [**Exhibit 10**].

30.     PDP also mentioned to Molina's representatives that it had not complied with its obligation to provide PDP with a monthly report with information regarding payments, utilization, prescription services, special coverage, ob-gyn, hospitalizations, enrollments and dis-enrollments. Molina was required to provide said reports to PDP every 15th of every month after executing the agreement. [**Exhibit 10**].

31.     Likewise, PDP notified Molina's representatives that without the reports, PDP was unable to verify if any recoupment from Molina from those risks assumed by PDP were correct or not. PDP notified Molina's representatives that it would object any recoupment efforts until said reports were provided. [**Exhibit 10**]. Also, said reports are an essential tool in providing managed

care to patients, as required by the best's practices standard imposed to medical groups under Medicaid.

32.     Finally, PDP expressed its position to not accept a payment less than those made during the past five (5) months for their 12,049 assigned beneficiaries, until utilization and per cap reports were presented. PDP offered its help in fixing the above-mentioned issues, not only in the applicable region, but in all regions. [**Exhibit 10**].

33.     On June 9, 2016 PDP notified Molina that after a year of working together, still the same problems with membership information, reports, and data in general, persisted. PDP notified that its prior experience was a membership of over 11,500 members, and up until June 2016 it was still missing 2,500 members. PDP notified that the risk pool settlement model which Molina notified to PDP was not the one agreed upon when the parties executed the agreement. [**Exhibit 11**].

34.     In sum, during the first year and seven months of relationship with Molina, Molina, without explanation and because of Molina's enrollment and disenrollment procedures, reassigned between 400 to 500 beneficiaries monthly from PDP to other groups, including Policlinicas.

35.     Every time PDP met with Molina's personnel to discuss the issues with membership lists, and utilization reports, a varied array of excuses were presented which included, problems with the information system, corporate personnel's intervention, Molina Puerto Rico's personnel faults, amongst others. Still the problems continued.

36.     Mrs. Madeline Figueroa, Mr. Edmundo Cabán and Mr. Federico Gordo, President of Molina Puerto Rico, being aware of all the situations presented by PDP, agreed to keep the monthly payment of $270,000 corresponding to 12,000 beneficiaries assigned to PDP, as indicated

in the explanation of benefits provided to PDP. They also agreed to fix the issues with membership lists and reports.

37.     At all relevant times, PDP indicated that it was willing to enter into negotiations with Molina and reach an agreement which would benefit both parties so that the health and well-being of PDP's assigned beneficiaries was not jeopardized. [**Exhibit 12**].

38.     Molina continued to pay the $270,000 monthly capitation fee for the assigned 12,000 beneficiaries up until the month of August 2016.

39.     Without explanation, during the months of September and October of the year 2016, Molina, contrary to the agreed upon terms by its key corporate personnel, paid PDP $145,000 monthly.

40.     The communication sent to Mr. Federico Gordo on November 7, 2016 was never answered by Molina. For such reason, PDP filed an administrative complaint with ASES on November 14, 2016. The administrative complaint was about the non-compliance of Molina Puerto Rico with its contractual terms. The administrative complaint was served on Molina Puerto Rico on November 15, 2016. [**Exhibit 13**].

41.     As what can only be described as retaliation for filing an administrative complaint, Molina did not make any payments to PDP during the months of November and December of 2016. The monthly payments are due on the 15th day of each month, coincidently the same day Molina Puerto Rico was served or put on notice of the administrative complaint filed by PDP.

42.     Instead of reaching an agreement with PDP, on December 13, 2016, Molina Puerto Rico served PDP with a termination with cause notice to be effective January 31, 2017. The reason stated in the termination notice was that, supposedly, an officer, director or managing employee

of PDP was excluded from participating in federal funded programs, thus rendering PDP ineligible to enter into an agreement with Molina Puerto Rico. [**Exhibit 14**].

43.    On December 14, 2016, PDP filed an appeal utilizing the internal appeal process of Molina Puerto Rico questioning its basis for the notice of termination. [**Exhibit 15**].

44.    Since no response was received from Molina and cancellation notice was effective on January 31, 2017, PDP filed a complaint with the District Court for the District of Puerto Rico requesting a temporary restraining order, preliminary injunction and permanent injunction against Molina. See, *PDP Health Manangement, Inc. v. Molina Health Care*, 17-cv-01007-PAD.

45.    In *PDP Health*, *supra*, after several in-chamber hearings, the Court ordered Molina to pay PDP the pending months of November and December of 2016 and that the parties reach a mutually satisfactory resolution on or before July 31, 2017. See, Docket 73, *PDP Health*, *supra*. The Court also ordered the parties to, no later than July 26, 2017, file a motion providing a detailed description of the next steps and addressing the court's concern as to the timeframe for disposition of the case. *Id.*

46.    The Court in *PDP Health, supra*, ordered the parties to reach a new agreement within (48) hours. Mrs. Madeline Figueroa contacted PDP's Executive Director requesting that PDP withdrew its complaint because they could not comply with the court-imposed deadline of (48) hours. Mrs. Madeline Figueroa expressed Molina's compromise to reach a new agreement in a period not to exceed (30) days.

47.    Pursuant to the parties' conversations to reach a satisfactory resolution of the complaint, including Molina's compromise to reach a new agreement with PDP in a period not to exceed (30) days, PDP, trusting Molina and in the sake of resolving differences amicably, filed a voluntary dismissal of the complaint. See, Docket 74, *PDP Health, supra*.

11

48.     Contrary to Molina's compromise which lead to the voluntary dismissal of the complaint, on November 3, 2017, Molina notified PDP a first draft of the proposed agreement. [**Exhibits 16 and 17**].

49.     Through the proposed agreement, Molina required that PDP recognized and accepted an undefined and/or undetermined deficit by means of agreeing to a "retention for deficit carve-out" of $10.00 out of the pmpm compensation PDP is set to receive under the new agreement. [**Exhibit 17, page 15**]. The proposed "carve-out" is in the pmpm's origin, meaning from the budget or funds assigned to cover beneficiaries needs, and not from the administrative portion of PDP.

50.     Also, Molina, without providing correct and reliable utilization and risk data, proposed a series of adjustments to the financial model currently in place with PDP. [**Exhibit 17, page 15**]. Section 10.6 of the agreement between Molina and ASES requires that the financial risk arrangement agreed upon be clearly stated in the provider agreement. Without correct and reliable utilization and risk data it was impossible for PDP to ascertain the validity of the proposed adjustments.

51.     PDP was never provided with a written notification of any recoupment of overpayments as required by Section 2.11 (g) of the PDP Agreement, as well as required by Section 16.13.1 of the agreement between Molina and ASES.

52.     As per the PDP Agreement, overpayments are those payments made by Molina to any provider which, **__after applicable reconciliation__**, provider was not entitled to receive.

53.     Once notified, pursuant to the PDP Agreement, PDP had a term of (30) days to provide payment or as established in Section 16.13.1 of the agreement between Molina and ASES, dispute the requested overpayment.

54.     Even though PDP had no prior written notice pursuant to the applicable agreements, on December 28, 2017 PDP disputed the amount requested by Molina through the proposed agreement by filing an amended complaint with ASES. [**Exhibit 18**].

55.     Parallel with its claim within ASES for the disputed debt, PDP sent a communication to Molina's counsel, Griselle Bermúdez, Esq., where it disputed the alleged debt and argued that under the terms of the risk letter of Triple – S, which as per Molina's executives applied at all relevant times, PDP had not received the corresponding surplus of services provided to beneficiaries which Molina was responsible to cover, to wit, dental services as well as obstetrician, pharmacy and high risk services. See, Section 1.1 of Exhibit C of the PDP Agreement. As per the PDP Agreement, after the monthly reconciliation, Molina was to pay PDP fifty percent of any surplus of the total premium allocation for said month. The first reconciliation was to be conducted by Molina on August 2015 and applied retroactively to April 1, 2015. See, Section 1.1(h) of Exhibit C of the PDP Agreement. [**Exhibit 19**]. Molina never conducted monthly reconciliations.

56.     Again, true to its tactics of intimidation and coercion, Molina retaliated against PDP for filing the administrative complaint by issuing a termination notice on February 22, 2018 claiming that it is "forced to terminate the Provider Services Agreement **under Section 4.3**." (emphasis added). The reasons provided by Molina to terminate the agreement pursuant to Section 4.3 were that PDP had refused to execute the proposed agreement and that Molina can no longer "financially continue to withstand the burden of PDP's existing debt owed to Molina, which as of February 2018 was over $3,500,000". The termination notice concludes indicating that "**in thirty (30) days**, Molina will be transferring the members assigned to PDP to another provider." (emphasis added). [**Exhibit 20**].

57.     Section 4.3 of the PDP Agreement states as follows:

> 4.3     **Termination with Cause.** In the event of a breach of any material provision of this Agreement, the party claiming the breach may give the other party written notice of termination setting forth the facts underlying its claim(s) that the other party has breached the Agreement. **The party receiving the notice of termination will have thirty (30) days from the date of receipt of such notice to remedy or cure the claimed breach to the satisfaction of the other party.** During this thirty (30) day period, **the parties agree to meet as reasonably necessary and to confer in good faith in an attempt to resolve the claimed breach.** If the party receiving the notice of termination has not remedied or cured the breach within such thirty (30) day period, the party who provided the notice of termination will have the right to immediately terminate this Agreement. Notwithstanding the forgoing, either party may immediately terminate this Agreement without providing the other party the opportunity to cure a material breach should the terminating party reasonably believe the material breach of this Agreement to be non-curable. (emphasis added).

58.     In accordance to Section 4.3, on February 28, 2018, PDP responded Molina's February 22, 2018 communication. In short, PDP contested that it disagreed with the statements included in said communication and that PDP has been in good faith trying to reach an agreement with Molina regarding the new contract. PDP even submitted its observations to the draft notified by Molina. Molina's position in turn is to not make any changes to the draft version, showing no intentions of reaching a compromise. Even so, PDP notified that it was willing to negotiate and execute the new contract immediately with Molina's current financial model, and that the alleged debt was wo be resolved by the arbitration process contemplated in the PDP Agreement. PDP asked Molina for the time, date and place for a meeting to resolve the claimed breaches in a reasonable manner. [**Exhibit 21**].

59.     Notwithstanding the information provided by Molina in its termination notice and in complete disregard to PDP's communication indicating its availability to resolve the alleged

breaches, Molina and Policlinicas concerted a series of actions directed to force PDP to close operations, all in favor of Molina gaining a competitive advantage during the current "RFP" period for the new governmental health plan model with ASES because patient encounters by PDP's PCPs would qualify if said PCPs and assigned beneficiaries were transferred to Policlinicas. This in turn, retraining commerce and/or trade by diminishing competitors' chances to provide services to a greater number of beneficiaries. All in complete disregard to patient's needs, health and overall welfare.

60.     Section 4.5 of the PDP Agreement requires that each PCP continues to provide services to each beneficiary assigned and who was receiving healthcare services from said provider prior to the termination notice, for a term of (90) days after the date of the termination notice. See, Clause 4.5 of the PDP Agreement.

61.     On February 26, 2018, Nilka I. García López, Provider Engagement Team Manager of Molina, sent a letter to all of PDP's PCPs notifying that effective March 31, 2018 the agreement between Molina and PDP was to be terminated. It was further asserted that during the following days after the letter, Molina was to be in communication to notify the proposition to transition the assigned PDP beneficiaries under the care of every doctor as PCP to Policlinicas. Finally, it was specified that said change should not alter the doctors contract as PCP with Molina, since all assigned patients would continue under their care. [**Exhibit 22**].

62.     On **March 1, 2018 <u>8:39AM</u>**, Wilfredo Ramos Rivera, Assistant Manager of Policlinicas sent an email to every PDP's PCPs welcoming them to Policlinicas and notifying that they received instructions from Molina that after April 1, 2018 the PCPs would provide services to their patients through Policlinicas. As such, Policlinicas requested that certain information of

each of the contacted PCP was provided to them to complete the credentialization process with Molina. [**Exhibit 23**].

63.     Like previous actions where Molina illegally reassigned beneficiaries of PDP to Policlinicas, Molina favored Policlinicas without regard to the beneficiaries right for continued care, health and needs and in violation of the agreement executed between Molina and ASES.

64.     The agreement between Molina and ASES is clear as to when, once a beneficiary is enrolled under a group, the MCO can reassign such beneficiary and none of the permitted situations include pending or threatened termination of the provider agreement. [**Exhibit 24**].

65.      On **March 1, 2018 1:17PM**, Wilfredo Ramos Rivera sent another email to all of PDP's PCPs in which a set of documents were attached and were identified as being required for the PCPs to "be activated" with Molina. [**Exhibit 25**].

66.     On **March 1, 2018 3:19PM** a cease and desist letter was notified by PDP to Policlinicas. [**Exhibit 26**].

67.     During a meeting held on March 2, 2018 by Mr. Álvarez-Rivera with PDP's PCPs, they notified that personnel from Molina was contacting them directly threatening to terminate their current contractual relationships if they did not agree to go on board with Policlinicas and complete the necessary documents. Molina's personnel went as far as to offer help in negotiating better economic terms with Policlinicas if the PCPs desired so.

68.     On another hand, some of PDP's PCPs were misled by Molina and Policlinicas into thinking that other PCPs had already signed with Policlinicas by providing false information, in an attempt to create confusion and cause that PDP's PCPs terminate their current relationship with PDP and move to Policlinicas.

69.     The actions concerted between Molina and Policlinicas to bait PDP's PCPs into terminating their current contractual relationships with PDP and participate under Policlinicas' IPA have only one explanation, Policlinicas' current PCP roster would not permit said group to assume all of PDP's assigned beneficiaries due to the limitations established by the agreement between Molina and ASES.

70.     The maximum number of enrollees per provider is 1,700 in the case of general practitioners, family medicine physicians and pediatricians in each region. See, Section 9.4.1, 9.4.1.1 and 9.4.1.2 of Exhibit 24.

71.     Furthermore, Molina is required by its current agreement with ASES to have in place an adequate network of available providers to ensure, *inter alia*, timely access to covered services and satisfy the demand of covered services with adequate capacity and quality of service. See, Section 9.1.2 of Exhibit 24.

72.     When determining and maintaining an adequate network of providers, Molina must consider and take into consideration, *inter alia*, the estimated eligible population and number of beneficiaries; number and type of providers required to offer services taking experience, training, and specialties into account; maximum number of patients per provider and the geographic location of providers and enrollees, taking into account distance, duration of trip, and means of transportation utilized by enrollees. See, Section 9.1.3, 9.1.3.1, 91.1.3.4, 9.1.3.5, 9.1.3.7 of Exhibit 24 and 42 C.F.R. 438.206(b)(1).

73.     There is considerable distance between the place of residence of a significant number of PDP's beneficiaries and Policlinicas' clinic. The majority if not all the beneficiaries are poor and medically needed individuals whose services would be limited because of their inability to seek treatment due to lack of transportation means. On the other hand, emergency services

would have to be provided in hospital emergency rooms with the utilization of ambulance services. This would result in massive increases in healthcare costs for the Government of Puerto Rico which in turn would reduce the quality of services in the market.

74.     Molina's and Policlinicas' actions can only be described as a clear restraint in commerce and/or trade since Molina is required to contract with enough PMGs to serve the enrollees in each Region, not reduce the number of PMGs in disparagement of the enrollees. See, Section 10.1.4 of Exhibit 24.

## FIRST CAUSE OF ACTION

### Sherman Act Infringement

75.     Paragraphs 1 through 74 are hereby incorporated by reference.

76.     Molina Puerto Rico and Policlinicas' coordinated acts are aimed to prevent PDP to carry out its right to do business and force PDP to close operation all in favor of Policlinicas, gain competitive advantage in the current "RFP" period and raise healthcare costs which the government of Puerto Rico is required by law to cover, as well as constitute a restraint of trade or commerce within a territory of the United States, which constitute a violation of Section 3 of the Sherman Act, 15 U.S.C. § 3.

77.     Molina Puerto Rico and Policlinicas' acts have caused or will cause PDP to suffer injury and damages of such nature that an award of monetary damages alone could not adequately compensate it.

78.     Molina Puerto Rico and Policlinicas' acts are greatly and irreparably damaging to PDP and will continue to be greatly and irreparably damaging to PDP unless enjoined by this Court pursuant to 15 U.S.C. § 26.

79.    Because an award of monetary damages cannot fully and adequately compensate PDP for its losses, PDP is without an adequate remedy at law.

### SECOND CAUSE OF ACTION

**Temporary Restraining Order and/or Preliminary Injunction**

80.    Paragraphs 1 through 79 are incorporated by reference.

81.    PDP has made a strong showing in its favor regarding likelihood of success on the merits, the potential for irreparable harm, the balance of the hardships, and the effect of the request on the public interest. Being likelihood of success the touchstone of the preliminary injunction inquiry, PDP respectfully believes that a temporary restraining order and/or preliminary injunction should issue.

82.    Considering the facts, Defendants should be enjoined by this Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure and applicable antitrust law and instructed to cease and desist the its acts.

83.    Defendants should be ordered to cease and desist from continuing their intimidating and/or coercive actions into luring PDP's PCPs into signing with Policlinicas and transferring beneficiaries to Policlinicas.

84.    Molina should be ordered to cease and desist from (a) continuing to pursue the termination of the PDP Agreement without affording PDP the opportunity to cure the alleged breaches and in clear violation of the PDP Agreement's terms; and (b) continuing to breach their agreed upon terms reached during the negotiation of the PDP Agreement with Molina's top corporate personnel and as has been its conduct during the greater part of more than a year and a half.

85.     Because an award of monetary damages cannot fully and adequately compensate PDP for this immediate harm, PDP is without an adequate remedy at law.

### THIRD CAUSE OF ACTION

### Permanent Injunction

86.     Paragraphs 1 through 85 are hereby incorporated by reference.

87.     Where a movant seeks permanent injunctive relief, the test is the same as for preliminary injunctive relief, except that the movant must show actual success on the merits of the claim, rather than a mere likelihood of success. In order to issue a permanent injunction, a district court typically must find that: (1) the movant has demonstrated actual success on the merits of its claims; (2) the movant would be irreparably injured in the absence of injunctive relief; (3) the harm to the movant from defendant's conduct would exceed the harm to the defendant accruing from the issuance of an injunction; and (4) the public interest would not be adversely affected by an injunction.

88.     In this case, for the reasons set forth above and after this case runs its ordinary course, a permanent injunction must issue to prevent Molina Puerto Rico and Policlinicas from further incurring in the illegal and egregious conduct described above.

### FOURTH CAUSE OF ACTION

### Declaratory Judgement

89.     Paragraphs 1 through 88 are hereby incorporated by reference.

90.     Considering the above detailed facts, declaratory judgement should be issued declaring that pursuant to Molina's executives actions and/or communications with PDP, the risk letter under which the PDP Agreement's financial model should be based is the letter issued by Triple – S, prior MCO of the applicable region. Also, it should be issued declaring that any

termination with cause under the PDP Agreement provide for a period of (30) days to cure any deficiencies and that the provider is required to continue to provide services to beneficiaries for a period of (90) days after the termination notice.

### FIFTH CAUSE OF ACTION

### Damages from Breach of Contract

91.     Paragraphs 1 through 90 are hereby incorporated by reference.

92.     Molina Puerto Rico's conduct constitute events of breaches under the PDP Agreement and as a result PDP suffered damages and losses.

93.     Among the damages and losses suffered by PDP due to Molina Puerto Rico's unilateral determination to reduce the agreed upon monthly payment and/or illegal transfer of members to other IPA, is the loss of said earnings, loss of future revenues and damages to PDP's reputation and goodwill.

94.     Pursuant to the PDP Agreement, PDP was to receive a monthly payment of $270,000, instead Molina Puerto Rico has paid $145,000 since September 15, 2016. The amount of damages pursuant to Molina Puerto Rico's conduct is not less than $2,250,000.

95.     Also, pursuant to the agreed upon risk letter by Molina's top executives which should apply to the financial model of the PDP Agreement, Molina has retained all surplus of total premium allocation for services which it was obligated to cover and not PDP. The amount withheld by Molina is not less than $3,700,000.00.

96.     In addition, the continuous illegal transfers of beneficiaries to Policlinicas and other IPAs has resulted in damages to PDP's reputation and goodwill. PDP estimate these damages in no less than $250,000.

## SEVENNTH CAUSE OF ACTION

### Indemnification and Damages

97.     Paragraphs 1 through 96 are hereby incorporated by reference.

98.     If PDP is made a party to any lawsuit or any legal action as a result of any act of Molina Puerto Rico and Policlinicas, Defendants must indemnify and hold PDP harmless from all expenses, fines, suits, proceedings, claims, losses, damages, liabilities or actions of any kind of nature, including, but not limited to, costs and attorney's fees, and any penalties imposed by the Commonwealth of Puerto Rico and/or the United States.

99.     PDP currently has no control over the services provided by Policlinicas nor can it possibly know the state of mind of the patients seeking treatment at Policlinicas and whatever association they make with PDP, for such reason PDP may be liable under medical-malpractice claims.

## EIGTH CAUSE OF ACTION

### Treble Damages, Attorney's Fees and Expenses

100.     Paragraphs 1 through 99 are hereby incorporated by reference.

101.     As a result of Molina Puerto Rico and Policlinicas' willful and malicious conduct to restrain commerce with the only purpose to force PDP out of business and gain competitive advantage, PDP is entitled to recover from Defendants actual damages, treble damages and attorney's fees and expenses it has incurred in bringing this action, pursuant to 15 U.S.C. §§ 15 and 26 and the Puerto Rico Civil Code.

## NINETH CAUSE OF ACTION

### Tortious Interference

102.     Paragraphs 1 through 101 are hereby incorporated by reference.

103.    Molina's and Policlinicas' employees, agents and/or directors have contacted, intimidated, and pressured PDP's PCPs in violating their existing agreements with PDP. In so acting on behalf of Molina and Policlinicas, said defendants were interfering with the agreements of all the PCPs who provide or provided services to PDP.

104.    Because of the tortious interference and bad faith conduct described above, PDP is in risk of losing members of an important group of PCPs that it had carefully assembled to provide services in IPA-401.

105.    Molina and Policlinicas has benefited from the conduct of its employees, agents and/or officers as described above for which they are jointly liable for the damages caused for these actions. Without PDP's PCPs Policlinicas is unable to comply with the ratios of beneficiaries by primary care physicians established by the agreement between Molina and ASES.

106.    Molina and Policlinicas acted in gross disregard to the truth and with the obvious intent to force PDP's PCPs to terminate their current relationship with PDP and therefore force PDP out of business, by providing false and contradictory information and threatening PDP's PCPs with termination of their current agreements with Molina, and informing and/or implying that other members of the group had already jumped ship in an attempt to create fear that they will be financially harmed if they did not sign with Policlinicas.

107.    Molina and Policlinicas are jointly liable to PDP for the damages caused by their tortious interference in an amount no less than $1,000,000.

## PRAYER FOR RELIEF

WHEREFORE, PDP respectfully moves this Court to enter a temporary restraining order, a preliminary and permanent injunction order, and judgement as follows:

A. Instructing Molina and Policlinicas to immediately cease and desist any contact with

physicians which form part of PDP's group in an attempt to lure them into signing with

Policlinicas and threatening them with terminating their current agreements with Molina if they

do not sign with Policlinicas;

B. Instructing Molina to immediately cease and desist from carrying out the proposed

cancellation of the PDP Agreement and transferring PDP's assigned beneficiaries to Policlinicas

until PDP is afforded with a period to cure the alleged contract breaches as per Section 4.3 of the

PDP Agreement;

C. Instructing Molina to cease and desists from applying a risk letter other than that risk

letter agreed upon by Molina's top executive personnel who negotiated the PDP Agreement with

PDP until a new agreement is reached between PDP and Molina;

D. Instructing Molina and Policlinicas to file with the Court and serve upon PDP, within

five (5) days after service on Molina and Policlinicas of the temporary restraining order and/or

preliminary injunction sought, a report in writing, under oath, setting forth, in detail, the manner

and form in which Molina and Policlinicas has complied with said order, and a report of any

beneficiaries which were transferred before the order and/or transferred after the order, but as a

result of a notification prior to the order;

E. Instructing Molina and Policlinicas, their agents, servants, employees, representatives

and all others in active concert or participation with them be enjoined and restrained during the

pendency of this action and permanently thereafter from carry out conduct constitutive of

coercion and/or intimidation, including the threat to transfer members to any other IPA, except

such transfer is within the boundaries of the PDP or ASES Agreement;

F. Instructing Molina and Policlinicas to immediately stop or refrain from incurring

conduct constitutive of restraining commerce and/or trade within the territory of Puerto Rico;

G. PDP also requests that this Court orders a speedy hearing of this action and advance it on the calendar in accordance with Rule 57 of the Federal Rules of Civil Procedure, in as much as it involves only issues of law on undisputed or relatively undisputed facts and that a temporary restraining order and/or preliminary injunction be entered;

H. PDP requests that this Court issue a Declaratory Judgment declaring that the termination of the PDP Agreement for cause is subject to a (30) day period to cure any alleged breach by the breaching party; that PDP's PCP are required to continue to provide services to beneficiaries for a period of (90) days after termination notice. Furthermore, as per negotiations with key corporate personnel of Molina, the applicable risk letter to which the financial model of the provider agreement was based is that of Triple – S, until a new agreement is reached by the parties.

I. That Defendants jointly and severally be ordered to compensate PDP for loss of revenues, past, present and future, resulting from defendants' illegal conduct and tortious interference, in an amount of not less than $7,200,000, plus interest.

J. That Defendants jointly and severally be ordered to compensate PDP for attorney's fees, costs, and expenses in an amount not less than $100,000;

K. That Defendants be required to indemnify, reimburse and/or compensate PDP for all expenses, losses, damages or liabilities, including but not limited to, costs and attorneys' fees that PDP sustains or could sustain because of any act or omission which may have caused or may cause harm to third parties; and

J. PDP be awarded treble damages and such other and further relief as is just and equitable, and the payment of costs, interest, and attorney fees.

## UNSWORN STATEMENT UNDER PENALTY OF PERJURY
### PURSUANT TO 28 U.S.C. §1746

I, Juan E. Alvarez-Rivera, of legal age, single, healthcare administrator of PDP, and resident of Caguas, Puerto Rico, declare under penalty of perjury that I have read the foregoing Verified Complaint and its supporting exhibits and that, to the best of my knowledge and belief and/or pursuant to information and documents in possession of PDP or its employees, all allegations herein contained are true and correct.

_____
JUAN E. ALVAREZ-RIVERA

22

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of this verified complaint and its exhibits will be served personally and immediately upon filing to Molina Puerto Rico at 654 Plaza, Suite 1600 654 Avenida Muñoz Rivera San Juan, PR 00918; Molina USA at 252 Ponce de León Ave., Floor 20, San Juan, P.R. 00918; to Policlinicas at 2015 Ave. Las Americas Ste #101 Ponce, PR 00717; and via email to Carlos Carrero, President Molina Puerto Rico at carlos.carrero@molinahealthcare.com; Edna Marin, VP of Network Management and Operations of Molina Puerto Rico at edna.marinramos@molinahealthcare.com; Molina USA through Griselle Bermúdez, Esq., Assistant General Counsel of Molina USA, grisselle.bermudez-rodriguez@molinahealthcare.com; and Policlínicas at policlinicasmedicasasociadas@gmail.com..


Dated: March 5, 2018                                                RESPECTFULLY SUBMITTED,
San Juan, Puerto Rico

*/s/José F. Escobar Machín*
José F. Escobar Machín
USDC-PR Bar No. 230509
**ESCOBAR LAW**
Box 193 El Valle
Caguas, P.R. 00727
Telephone (787) 308-7705
*lcdojescobar@gmail.com*

*S/ GERARDO GONZALEZ ROMAN*
USDC-PR 209314
P.O. Box 1421
Boquerón, Puerto Rico 00622
(787)643-3730
Email: jerrygon6004@yahoo.com


*Counsel to PDP*